JAMES WATERFIELD AND ELIZABETH WATERFIELD v. WILLIAM WILBER.

*Vendor and vendee—Bill to enforce lien for purchase price.*

1. Where the contract of purchase set forth in a bill filed by two complainants to enforce a vendor's lien is *entire*, no part being

apportioned to the respective owners of the two parcels sold, which were owned in *severalty* by the vendors, and the relative value of which parcels is not shown by the evidence in the case, the bill cannot be maintained.

2. When a vendor resorts to a court of equity to declare and enforce a vendor's lien, he must allege the contract of sale with reasonable certainty, and the consideration and terms of payment must be alleged and clearly proven. *Mowrey v. Vandling*, 9 Mich. 39; *Dunton v. Outhouse*, 64 Id. 419.

So *held*, where the bill alleged that the unpaid purchase money was to be paid in five or six years, at a given rate of interest, and complainants' proof was that defendant was to have six or seven years in which to make such payment.

Appeal from Oakland. (Stickney, J.) Argued January 12, 1887. Decided February 3, 1887.

Bill to enforce a vendor's lien. Defendant appeals. Decree reversed and bill dismissed. The facts are stated in the opinion.

*J. W. Robbins*, for complainants.

*Arthur R. Tripp*, for defendant.

CHAMPLIN, J. The original bill of complaint in this case was filed by Elizabeth Waterfield against the defendant for the purpose of enforcing a vendor's lien for a part of the unpaid purchase money upon the sale of the east half of the south-west quarter, and the west half of the south-east quarter of the north-west quarter, of section 3, in township 5 north, range 9 east, being in the town of Brandon, Oakland county, Michigan.

It stated that on the tenth day of June, 1875, she was the owner in fee simple of the above land, and on that day sold and conveyed it to defendant for the price of $600, $400 of which was paid down, and defendant was to have five or six years in which to pay $200 with interest at 10 per cent per annum; that no security was taken therefor, but complainant was to hold a lien on the land for said unpaid purchase

money; that on or about the sixth day of May, 1876, defendant paid one year's interest. It charges that no part of the said $200 has been paid, nor the interest other than that above stated; and that she has not waived nor relinquished her vendor's lien for the unpaid purchase money. It prays for a foreclosure and sale to satisfy such lien.

The defendant answered, and admitted her ownership and sale, but denied that the purchase price was $600; averred that it was only $400, and was fully paid down at the time of sale.

Proofs were taken, but before decree defendant ascertained that complainant never owned the parcel last above described, comprising 20 acres of the land alleged to belong to complainant, but the same belonged wholly to James Waterfield, the husband of complainant. The deed put in evidence showed that it was executed by James Waterfield and Elizabeth Waterfield, his wife, and contained a covenant that they were well seized in fee simple of the granted premises. The defendant petitioned the court for leave to amend his answer so as to deny instead of admitting that complainant was the owner in fee simple. This was granted. The complainant then petitioned the court for leave to amend her bill of complaint, so as to add the name of James Waterfield as a co-complainant, which was also granted, and an amended bill was filed in which it is alleged that on the tenth of June, 1875, they owned in fee simple the lands above described. The rest of the bill is substantially the same as the original bill, except that the necessary changes are made to adapt it to the two complainants instead of one. The record does not show that any answer was filed to this amended bill, but it is presumed that the amended answer stands for answer to the amended bill.

No joint ownership by complainants in the lands conveyed was shown. On the contrary, it appears that they were not the owners in fee of the lands conveyed, but one of them

owned 80 acres and the other 20 acres of such land, and there is no proof of what the purchase price of each parcel was. It also appears that, immediately upon the deed being executed, defendant went upon the premises described in the deed, and built a house thereon, and removed therein with his wife, Jane Wilber, and that they have ever since occupied and used it as a homestead. The contract of purchase being entire, according to complainants' claim, and no part apportioned to the respective owners, and there being no evidence of the relative value of each parcel at the time of the sale, and the bill alleging a joint ownership, this bill to enforce a vendor's lien cannot be maintained.

But there is still another reason why there is no lien in this case. In *Dunton v. Outhouse, ante,* 419, we said that, when a vendor resorts to a court of equity to declare and enforce a vendor's lien, it is necessary that he allege the contract of sale with reasonable certainty, and that the consideration and terms of payment must be alleged and clearly proven. *Mowrey v. Vandling,* 9 Mich. 39. The bill alleges that the money was to be paid in five or six years, at 10 per cent. interest, which is uncertain in itself; and the proof was that defendant was to have six or seven years in which to pay.

Complainant James Waterfield testifies that defendant paid him, on May 6, 1876, $30 to apply on interest. The defendant denies this, and Mrs. Wilber testifies that they loaned Mr. Waterfield $30, and afterwards he repaid it, or a portion of it, by allowing her to trade upon his credit at a certain store. Complainant also testifies that, about a week before Christmas in 1876, he sent John Walter to fetch defendant to his blacksmith shop, and that he did so, and that complainant then said to defendant:

"William, I have sent for you to see if you could pay me any of that money,—the two hundred dollars that is back on the land, or interest."

He said:

"No, James; I was not expecting to be called on now. I have been sick with the rheumatism all winter, and not able to do anything, and not looking or expecting to be called on now. I have paid the first year's interest, and overpaid it, and there is not another year's interest due yet, and you gave me six or seven years to pay the two hundred dollars in, that is back, by paying you 10 per cent. interest annually, and I hope when the time comes it is due I shall be able to pay you."

John Walter testified substantially to the same thing. The defendant denied having any such conversation.

If the complainant's testimony as to the terms of sale is true, it is most unlikely that any such conversation occurred. Why should he take the pains to send for defendant to ask him to pay him any of that $200 that was back on the land, or the interest, when by his own testimony no interest was due, and the principal would not become due for nearly five years from that time? It is inconsistent with his own theory and with his testimony.

The other testimony introduced by him consisted of admissions made in casual conversations by defendant or his wife, and is very unsatisfactory, not to say unreliable. Complainants were called upon to make out the contract relied upon by convincing proofs. We do not think they have done so irrespective of the positive denial of defendant. But defendant and his wife, who is a sister of James Waterfield, both testify that the contract of sale, as finally concluded and agreed upon in the presence of both complainants, was a sale for cash for $400, which was all paid. This is denied by Mr. Waterfield; but Mrs. Waterfield, who defendant and his wife both testify was present at the time the contract was made, did not testify in the case.

We are not satisfied that the complainants have made out the contract set forth in the bill by a fair preponderance of evidence. The bill of complaint must be dismissed, with costs of both courts.

The other Justices concurred.